1635

The STATE, Respondent v. Ernest BATTLE, Appellant.

(403 S.E. (2d) 331)

Court of Appeals

*Asst. Appellate Defender Robert M. Dudek,* of *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka,* Columbia, and *Sol. Charles Molony Condon,* Charleston, *for respondent.*

Heard March 11, 1991; Decided April 1, 1991.

Rehearing Denied April 16, 1991.

GOOLSBY, Judge:

A jury convicted the appellant Ernest Battle of possession of cocaine for distribution in proximity of a school. The dispositive questions on appeal relate to the validity of the search of Battle's home, the admission of the evidence concerning the distance from Battle's home to a school, and the refusal of the trial court to allow Battle to withdraw from evidence an exhibit introduced by Battle during the State's case. We affirm.

## I.

We find no merit in Battle's argument that the trial judge erred in finding that he freely and voluntarily consented to the search of his home. Battle claims the officers obtained his consent to the search of his home by threatening to arrest his girlfriend and turn her children over to the Department of Social Services (DSS) and by threatening to seek a search warrant if he did not consent to the search.

The question of whether a consent to a search is either voluntary or the product of duress or coercion is one of fact to be determined by the trial judge "from the 'totality of the circumstances.' " *State v. Wallace,* 269 S.C. 547, 550, 238 S.E. (2d) 675, 676 (1977).

Although, as the record shows, the officers did tell Battle's girlfriend she "could go to jail for what was in the house," the record does not show the officers threatened to arrest her and send her children to DSS if Battle did not consent to their search of his home.

As to the officers telling Battle that either he could sign a written consent to search or they would seek a search warrant, the explanation to Battle by the officers of their options did not invalidate Battle's consent to the search of his home. The officers also advised Battle of his *Miranda* rights before the search and they advised him that he could consent or not to the search and could stop the search whenever he wanted. Moreover, Battle gave his written consent to the search and he assisted the officers in their search by pointing out the particular location of the cocaine in a dresser. *See id.* at 551, 238 S.E. (2d) at 676 ("While a threat to obtain a warrant is a factor to be considered in determining the voluntariness of consent, it will not necessarily vitiate that consent."); *United States v. Long*, 866 F. (2d) 402 (11th Cir. 1989) (even if the officers told the defendant they could come back and "dig the place up," the statement did not amount to coercion); *United States v. Stallings*, 810 F. (2d) 973 (10th Cir. 1987) (a consent to search held voluntary where the law enforcement officers testified they told the defendant he was not required to consent to the search and they told the defendant they would attempt to obtain a warrant if he did not consent); *United States v. Al-Azzawy*, 784 F. (2d) 890 (9th Cir. 1985), *cert. denied*, 476 U.S. 1144, 106 S. Ct. 2255, 90 L. Ed. (2d) 700 (1986) (whether *Miranda* warnings had been given is a factor to be considered in determining the voluntariness of consent); *United States v. Faruolo*, 506 F. (2d) 490 (2nd Cir. 1974) (a law enforcement officer's well-founded advice that a warrant can be obtained absent a consent to a search does not constitute coercion where the defendant was given partial *Miranda* warnings and was told he did not have to consent to the search).

## II.

We also find no merit in Battle's contention, to quote the exception raising it, that "[t]he trial judge erred in allowing a police officer to testify, over objection, as to

the distance of the school from [Battle's] house where [the officer] used the odometer on his automobile, and there [being] no evidence the odometer was calibrated and reliable."

The trial judge ruled the question of whether a person ■ who bases his testimony regarding distance on an odometer reading checked the odometer for accuracy goes to the weight of the person's testimony and not to its admissibility. We agree. *See Hines v. State*, 487 So. (2d) 970 (Ala. Crim. App. 1986), *vacated on other grounds sub nom. Hines v. Alabama*, 479 U.S. 1077, 107 S. Ct. 1271, 94 L. Ed. (2d) 133 (1987) (questions as to the accuracy of automobile odometers to measure distances goes to the weight and not the admissibility of the evidence); *Foerst v. Rotkis*, 244 Pa. Super. 447, 368 A. (2d) 805 (1976) (the accuracy of a police car's odometer and the accuracy of the plaintiff's car's odometer goes to the weight of the evidence and creates a jury question as to the actual distance between the plaintiff's and defendant's buildings); *cf. State v. Tarquinio*, 3 Conn. Cir. 566, 221 A. (2d) 595 (1966) (testimony of police officer as to speedometer's reading is *prima facie* evidence of a violation of speed laws even though no evidence of the accuracy of the speedometer is introduced).

In any case, the odometer evidence that the distance from the school to Battle's house was "approximately four tenths" of a mile was cumulative to other evidence found in the record and received either without objection or a motion to strike. When the officer who testified as to the odometer reading was asked on cross-examination whether he thought the school "might be within half a mile" from Battle's residence, he answered "Yes." *See* 32 C.J.S. *Evidence* § 546(16), at 139-40 (1964) (an ordinary witness may give his estimate of distances, provided the witness is cognizant of the facts on which the opinion is based); *cf. Harmon v. Columbia & G.R. Co.*, 32 S.C. 127, 10 S.E. 877 (1890) (a lay witness may speak to his own observation and experience regarding the distance within which it would take a train to stop).

### III.

We likewise find no merit in Battle's contention, again ■ quoting from the exception raising it, that "[t]he trial judge erred in refusing [his] request to withdraw an

exhibit which he introduced during the State's case, since this deprived [him] of his right to last argument to the jury."

The trial judge refused Battle's motion to withdraw the exhibit, upon which Battle cross-examined the witness through whom it was introduced, because he did not think he had the discretion to allow it to be withdrawn once it had been introduced. *But see* 23A C.J.S. *Criminal Law* § 1210, at 86-87 (1989) ("It is within the discretion of the court to permit evidence to be withdrawn, by the party eliciting it.").

Apart from the fact that Battle's exception does not really preserve the question argued, *i.e.*, that the trial judge abused his discretion in refusing to exercise discretionary authority when it is warranted, the refusal of the trial judge to allow Battle to withdraw the exhibit did not prejudice Battle. Battle waived the right to make the concluding argument when he intentionally introduced the exhibit and not when the trial judge denied his request to withdraw it. *See State v. Gellis*, 158 S.C. 471, 487, 155 S.E. 849, 855 (1930) ("[I]f a defendant offers any evidence on trial of the case, the State is not deprived of its general right to the opening and concluding arguments."). Once waived, the right was gone and could not be reclaimed, even if the State's position remained unchanged. *See* 92 C.J.S. *Waiver*, at 1069 (1955) ("[O]nce a right is waived it is gone forever and it cannot be reclaimed[,] . . . recaptured[,] . . . retracted, recalled, or expunged, even in the absence . . . of any change in position by the party in whose favor the waiver operates.").

Affirmed.

SANDERS, C.J., and GARDNER, J., concur.